Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3611 | **DATE** | 9/13/2001 |
| **CASE TITLE** | Munster Med Research vs. United HealthCare of IL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 10/15/2001 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We grant Plaintiff's motion (Doc 10-1) for summary judgment as to liability and conclude that Defendant breached it contractual obligations to Plaintiff. We deny the motion as to damages, however, because genuine issues of material fact continue to exists. Defendant's motion (Doc 11-1) for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 14 2001 | |
| | Notified counsel by telephone. | | date docketed | 18 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 SEP 13 PM 5:50 | | |
| SCT | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| MUNSTER MEDICAL RESEARCH | ) | |
|---|---|---|
| FOUNDATION, INC., d/b/a COMMUNITY | ) | **DOCKETED** |
| HOSPITAL, | ) | |
| | ) | SEP 1 4 2001 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 00 C 3611 |
| | ) | |
| UNITED HEALTHCARE OF ILLINOIS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the Court are the cross-motions for summary judgment of Plaintiff Munster Medical Research Foundation, Inc. (the "Hospital") and Defendant United Healthcare of Illinois, Inc. ("UHC"). For the following reasons, we grant the Hospital's motion as to UHC's liability for breach of contract but deny it as to damages. In addition, we deny UHC's motion.

### BACKGROUND

Munster Medical Research Foundation, Inc., d/b/a/ Community Hospital is a not for profit hospital located in Munster, Indiana. Effective March 1, 1996 the Hospital entered into an agreement with Share Health Plan of Illinois, Inc., and Chicago HMO



Ltd. (the "Share Agreement") to set forth the terms and conditions of the Hospital's participation in Share's networks as well as applicable rates for certain services. Among them was emergency cardiac services performed by the Hospital, but not other cardiac services. The Agreement did not refer to non-emergency cardiac services.

Effective June 15, 1996, the Hospital entered into an agreement with The MetraHealth Insurance Company (the "MetraHealth Agreement"). Like the Share Agreement, the MetraHealth Agreement set forth the terms and conditions of the Hospital's participation in MetraHealth's networks. Unlike the Share Agreement, however, the MetraHealth Agreement contained rates applicable to cardiac services. Thus, as of the summer of 1996, the Hospital was providing services to members of benefit plans covered by the Share Agreement and the MetraHealth Agreement and billing the respective plan administrators.

United Health Care of Illinois, Inc. ("UHC") became the successor company to both Share and MetraHealth. In 1997 the Hospital and UHC, as successor in interest, entered into two amendments, one to the Share Agreement and the other to the MetraHealth Agreement. Frank Zahrobsky, UHC's contracting representative, negotiated on behalf of UHC. The Hospital was represented by its Director of Managed Care Martin D'Cruz. Both Amendments became effective on August 1, 1997.

The Amendment to the Share Agreement (the "Share Amendment") added rates applicable to non-emergency cardiac services that had not been available under the existing Share Agreement. The Amendment to the MetraHealth Agreement (the "MetraHealth Amendment") established rates applicable to inpatient and outpatient rehabilitation services performed by the Hospital that had not been available under the existing MetraHealth Agreement. While the MetraHealth Amendment does not set forth any rates applicable to outpatient cardiac services performed by the Hospital, those rates appeared in the underlying MetraHealth Agreement.

On or about January 15, 1998, Zahrobsky wrote D'Cruz a letter stating that the "All Payor" clause of the Amendments "allows [UHC] to extend the rates and provisions of the [Share] Agreement to all payors." Thus, Zahrobsky concluded, "[e]ffective March 1, 1998, the current [Share] Agreement applies to all products offered by United HealthCare of Illinois, Inc., United HealthCare Insurance Company of Illinois, and United HealthCare Services, Inc., which includes all products formerly offered by MetraHealth." On March 1, 1998, UHC commenced payment at uniform rates for cardiac services performed by the Hospital.

The Hospital brought this action alleging that UHC breached the MetraHealth Agreement by unilaterally imposing payment rates from the Share Agreement and Amendment onto cardiac claims for MetraHealth patients. UHC protests, arguing that

the broad "All Payor" clause provides that the rates for cardiac services stated in the Share Agreement apply to cardiac services rendered to members in <u>all</u> UHC-administered plans. Each side has moved for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." <u>Celotex</u>, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); rather, "[a]

genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir.1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record--only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

## DISCUSSION

The Hospital believes that UHC's invocation of the Share Amendment cardiac outpatient rates to pay for care provided under the MetraHealth Agreement violates the terms and definitions of that Agreement. We agree. Two separate contracts existed between the parties, each of which contained its own terms, definitions, duties and rates. That these contracts were assigned to UHC does not permit UHC to pick and choose which rates it desires among the two contracts.

UHC's arguments to the contrary turn on how expansively we interpret the "All Payor" provision. That provision reads:

> The provisions of this Amendment apply to Health Services rendered by Hospital to Members covered by Benefit Contracts sponsored or issued by all Payors.

(Share Amd. at 1; MetraHealth Amd. at 1.) To read this provision as permitting Share Amendment rates to supplant the rates expressly set forth in the MetraHealth

Agreement would render the terms and definitions of the MetraHealth Agreement meaningless.

The applicable terms in the MetraHealth Agreement are the following:

"Payor" is the "party financially responsible for payment for Covered Services, which are . . . for other [non-HMO] products, The MetraHealth Insurance Company of an affiliated insurer. . . ";

"Covered Services" are "those services and benefits which a Covered Person is entitled to receive";

"Products" are "[t]hose Products offered by us in which you participate, as set forth in the Product Description Exhibits to this Agreement"; and

"Compensation" is "[t]he method by which you will be paid under this Agreement for providing services for each Product in which you participate. Compensation is set forth in the Compensation Exhibits. The Compensation is applicable for each Product as noted in the Product Description Exhibit."

(MetraHealth Agreement at 1 ¶¶ 2.4, 2.3, 2.5, 2.0.) The terms and definitions in the MetraHealth Agreement establish a cohesive framework of services, products and rates. Nowhere are Share products or services mentioned, much less designated appropriate rates. Were we to impose the Share Amendment's cardiac rates, the MetraHealth Agreement's framework would unravel. Its core definitions – "Payor," "Products" and "Compensation" – as well as the negotiated rates would all become meaningless.

Furthermore, were we to construe the "All Payor" clause as permitting the imposition of Share Amendment cardiac rates on MetraHealth members, that

construction would amount to a material modification to the contract unsupported by consideration. On this issue, UHC asserts that Hospital's opportunity to participate in the Share network for outpatient cardiac care constituted consideration. While that opportunity may comprise consideration for the Share Amendment itself, it does not comprise consideration for the material modification in the change of rate imposed upon services provided to MetraHealth members. The result – that UHC is getting more than what it bargained for at no additional cost – is impermissible. If UHC wanted to impose Share Amendment rates on MetraHealth members, it should have included such an amendment in the MetraHealth Agreement, rather than attempt to bootstrap the rates at a later time.

Endeavoring to avoid this result, UHC urges us to read the All Payor provision overbroadly. Tracking the definitions furnished in the Share Amendment, UHC contends that a "Member" is an individual properly enrolled for coverage under a Benefit Contract; a Benefit Contract is a benefit plan including health care coverage and contains the terms and conditions of a Member's coverage; Health Services are the health care services and supplies covered by the Member's Benefit Contract; and Payor is the entity or person authorized to access n the Plan's networks of participating providers and that has the financial responsibility for payment of Health Services covered by a Benefit Contract. From these definitions UHC interprets "Members

covered by Benefit Contracts sponsored or issued by all Payors" to include any individual properly enrolled in any benefit plan sponsored by UHC, "e.g. all persons for whom the Hospital renders services and subsequently seeks compensation under either the Share Agreement or the Metra Agreement."

This interpretation is without merit. In asserting it, UHC relies solely on the definitions that appear in the Share Amendment and ignores the definitions that appear in the MetraHealth Amendment. Fatally, their brief neglects to harmonize the provision with the terms and definitions in the MetraHealth Agreement. This renders UHC's interpretation implausible, as it ignores the existence of an entirely separate and independent valid contract. Accordingly, UHC cannot prevail on its proffered interpretation of the contractual language. We conclude that UHC breached its contractual obligations to the Hospital because the All Payor clause does not permit UHC to pay Share Amendment rates for services provided pursuant to the MetraHealth Agreement and Amendment.

The Hospital has also moved for summary judgment on the issue of damages. We cannot grant this motion at this time because the precise amount of the underpayment has not yet been established. Although Plaintiff submitted several spreadsheets purporting to state the amount of underpayment, Plaintiff concedes in the accompanying affidavit that several of the patients identified were Share enrolles

whose claims were incorrectly paid. This allegation falls outside of the scope of today's opinion and leaves the issue of appropriate damages unresolved. Because of the incomplete record before us, we cannot award summary judgment as to damages at this time.

## CONCLUSION

For the foregoing reasons, we grant Plaintiff's motion for summary judgment as to liability and conclude that Defendant breached its contractual obligations to Plaintiff. We deny the motion as to damages, however, because genuine issues of material fact continue to exist.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: _____September 13, 2001_____